UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NATHAN BRINTON,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>VIVINT INC. et al,<br><br>　　　　　　Defendant. | Case No. 3:23-cv-06105-TMC<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND |

## I.     INTRODUCTION

Plaintiff Nathan Brinton served Defendant Vivint Inc. with a state-court complaint alleging Vivint sent him misleading and unsolicited spam emails, in violation of Washington's Commercial Electronic Mail Act ("CEMA"), Washington's Consumer Protection Act ("CPA") and analogous California and Florida statutes. Vivint removed the case to this Court, and Brinton now moves to remand. Dkt. 13. Brinton asserts that this case does not meet the amount-in-controversy requirement for federal diversity jurisdiction, that his claimed CEMA violations are not concrete injuries required for Article III standing, and that Vivint performed an improper "super snap" removal. Vivint opposed remand (Dkt. 16) and Brinton replied (Dkt. 17). While Brinton's complaint alleges concrete injuries, and Vivint removed the case after it had been commenced under Washington state law, the amount in controversy is insufficient for diversity

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND - 1

jurisdiction. Accordingly, the Court GRANTS Brinton's motion to remand. The Court DENIES Brinton's request for attorney's fees.

## II.   BACKGROUND

On November 6, 2023, Brinton served Vivint with a summons and complaint to be filed in Clark County Superior Court (Dkt. 1 at 1) alleging that Vivint and John Does 1–10 violated CEMA and the CPA, Cal. Bus. & Prof. Code § 17529.5, and Fla. Stat. § 668.603 by sending him spam emails that obscured the sender and led him to websites selling Vivint's products. *See* Dkt. 1-1 at ¶¶ 2, 9–13. On December 1, Vivint timely removed within thirty days of receiving Brinton's complaint and asserted diversity jurisdiction based on Brinton's Washington citizenship, Vivint's Utah citizenship, and Brinton's statement that he intended to prove and seek damages exceeding $75,000 (Dkt. 1-2) to show the jurisdictional amount. Dkt. 1; *see* 28 U.S.C. §§ 1332, 1441, 1446. On June 12, 2024, Brinton moved to remand (Dkt. 13) and Vivint opposed the motion (Dkt. 16).

## III.   LEGAL STANDARDS

**A.   Removal Jurisdiction and Amount in Controversy**

The diversity jurisdiction statute gives federal district courts subject matter jurisdiction over civil actions where the parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). A defendant must generally remove a case within thirty days of receiving the complaint, 28 U.S.C. § 1446(b)(1), and the Court looks to the face of the complaint to determine whether diversity of citizenship exists. *Miller v. Grgurich*, 763 F.2d 372, 373 (9th Cir. 1985). The notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and need not contain evidentiary submissions. *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 788–89 (9th Cir. 2018) (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014)).

But "[i]f the plaintiff contests the defendant's allegation . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin*, 574 U.S. at 88.

The burden falls on the removing defendant to prove the amount in controversy exceeds $75,000, including damages, the cost of complying with an injunction, and any attorney's fees awardable under fee shifting statutes. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018); *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006). And while a plaintiff's concession of the amount in controversy can be "strong evidence" that the requirement is satisfied, it is not dispositive, and the Court may consider the complaint, notice of removal, and "summary-judgment-type evidence" to assess the amount in controversy. *Id*. Removal statutes are strictly construed against removal jurisdiction. *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1056–57 (9th Cir. 2018).

**B.     Article III Standing**

If a plaintiff in a removed case lacks Article III standing, the case must be remanded to state court. *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016); 28 U.S.C. 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). The legislature's "creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). But many statutory violations, even "intangible" ones, are also concrete injuries. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1117–18 (9th Cir. 2022) (holding, even after *TransUnion*, that the receipt of unsolicited telemarketing calls in violation of the TCPA is a concrete injury sufficient

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND - 3

to confer Article III standing).

"In *TransUnion*, the Supreme Court reaffirmed the preexisting rule that an intangible injury qualifies as 'concrete' when that injury bears a 'close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.'" *Wakefield*, 51 F.4th at 1118 (quoting *TransUnion*, 594 U.S. at 414). "[A]n intangible injury is sufficiently 'concrete' when (1) [the legislature] created a statutory cause of action for the injury, and (2) the injury has a close historical or common-law analog." *Id.* at 1118. In the context of unsolicited telemarketing calls, the Ninth Circuit has recognized "a common-law analog to privacy violations." *Id.* (citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1042–43 (9th Cir. 2017)). Other district courts, including this district, have recognized that receiving "spam" emails is encompassed by this analog as well. *See, e.g.*, *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1007–11 (W.D. Wash. 2019); *Lynch v. AML Network Ltd.*, No. CV 21-3574-GW-RAOX, 2021 WL 4453470, at *5 (C.D. Cal. Sept. 27, 2021).

C.   **Super Snap Removals**

"State law determines when a state court dispute becomes a cognizable action eligible for removal." *Casola v. Dexcom, Inc.*, 98 F.4th 947, 955 (9th Cir. 2024). The term "super snap removal" can refer to cases removed before filing—in some states, this may be before the action has "commenced" and is therefore improper. *See id.* at 964; 28 U.S.C. § 1446(c)(1). In Washington, however, a civil action "can also be commenced by service of a summons and complaint, not purely by filing the complaint." *Id.* at 955 n.8 (first citing RCW 4.28.020, and then citing *Seattle Seahawks, Inc. v. King Cnty.*, 128 Wash. 2d 915, 917, 913 P.2d 375 (1996)).

IV.   **DISCUSSION**

This Court agrees with the other district courts that have found receipt of spam emails to be a concrete injury that establishes Article III standing. *See, e.g., Harbers*, 415 F. Supp. 3d at

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND - 4

1007–11; *Lynch*, No. CV 21-3574-GW-RAOX, 2021 WL 4453480, at *4. The detailed analysis of concrete injury under CEMA by this district in *Harbers* remains persuasive after *TransUnion*. The Washington, California, and Florida statutes at issue all recognize that the recipient of unsolicited emails suffers an injury, whether in the form of "lost productivity and resources, annoyance, consumption of valuable digital storage space and financial costs," in addition to the foundational injuries to privacy and freedom from nuisance. *Lynch*, No. CV 21-3574-GW-RAOX, 2021 WL 4453480, at *4; *see also Harbers*, 415 F. Supp. 3d at 1007–08 (CEMA was "enacted to protect the public's interest in being free from certain forms of deceptive spam," which harm "businesses and internet users because it takes up time, causes frustration," and makes it difficult to identify legitimate messages); Fla. Stat. § 668.601 (recognizing legislative intent "to protect the public and legitimate businesses from deceptive and unsolicited commercial electronic mail"). This injury is found on the face of Brinton's complaint and is consistent with the Supreme Court's holding that a statutory violation must result in concrete injury to satisfy federal standing requirements. *TransUnion,* 594 U.S. at 439–40.

  Brinton's assertion that Vivint made an improper super snap removal is also incorrect. Washington civil actions can be commenced by service of a summons and complaint. *See Casola*, 98 F.4th at 955 n.8. Vivint has presented sufficient evidence that Brinton served a summons and his complaint on Vivint which then removed to this Court. Vivint's removal was effective. *See id*.

  Because the parties do not contest diversity of citizenship, the only remaining issue is whether the amount in controversy for diversity jurisdiction has been met. Dkt. 13, 16, 17. The Court concludes that Vivint has not proven the amount in controversy exceeds $75,000, despite Brinton's statement that he intended "to prove and seek damages exceeding" that amount (Dkt. 1-2). Although a plaintiff's statement may be strong evidence that the amount in

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND - 5

controversy has been met, it "will not establish the amount in controversy if it appears to be only a bold, optimistic prediction." *Hodgell v. Andersen Corp.*, No. 2:23-cv-00649-LK, 2023 WL 5091515, at *2 (W.D. Wash. Aug. 9, 2023) (quotation marks and citation omitted) (remanding case alleging CEMA violations).

Brinton claims that Vivint caused "over twenty" emails to be sent to him in violation of Washington law under CEMA and the CPA. Dkt. 1-1 ¶ 2. He alleges that the emails originated "from several different servers in Florida, California, and France among others." *Id.* ¶ 14. In addition to CEMA and the CPA, he seeks damages under California and Florida statutes for the emails that originated from servers in those states. *Id.* ¶¶ 25, 29. Although his prayer for relief seeks treble damages under the CPA, he has not asserted a claim for actual damages. *See id.* ¶¶ 32–42.

Although CEMA does not directly provide a recipient of unsolicited emails a private cause of action for damages, the recipient can bring a civil action under the CPA for statutory or actual damages. *See* RCW 19.190.030(1); *Wright v. Lyft, Inc.*, 189 Wash. 2d 718, 726, 406 P.3d 1149 (2017) ("[I]t was the legislature's intent for CEMA violations to be brought under the CPA."); *Gragg v. Orange Cab Co., Inc.*, 145 F. Supp. 3d. 1046, 1051–53 (W.D. Wash. 2015) ("[T]he legislature clearly stated that the sending of an email message prohibited by CEMA is a violation of the Consumer Protection Act . . . the recipient . . . 'may bring a civil action against the sender for the greater of $500 or actual damages.'"). The CPA's treble damages provision applies only to actual damages. RCW 19.86.090; *Mason v. Mortg. Am., Inc.*, 114 Wash. 2d 842, 855–56, 792 P.2d 142 (1990). The California statute provides for $1,000 per violating email originating in California (*see* Cal. Bus. & Prof. Code § 17529.5), and the Florida statute provides for $500 per email originating in Florida (*see* Fla. Stat. § 668.603).

In attempting to prove the amount in controversy has been met, Vivint assumes that

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND - 6

Brinton's claim that he received "over twenty" spam emails means 29 emails, and it assumes that he will recover statutory damages for each of those emails under both the Washington and California statutes, resulting in statutory damages per email of $1,500. *See* Dkt. 16 at 4. Treble damages under the CPA do not apply because Brinton does not assert any actual damages. *Mason*, 114 Wash. 2d at 856; *see* Dkt. 1-1. Vivint's statutory damages estimate would be as follows:

| Statute | Damages Per Email | Number of Emails | Total Damages |
| --- | --- | --- | --- |
| RCW 19.190.040 (CEMA) | $500 | 29 | $14,500 |
| RCW 19.86.090 (treble damages) | No actual damages alleged | n/a | n/a |
| Cal. Bus. & Prof. Code § 17529.5 | $1,000 | 29 | $29,000 |
| **Grand Total** | -- | -- | **$43,500** |

Brinton additionally seeks recovery of any applicable attorney's fees. Dkt. 16 at 11–12. "[R]easonable attorneys fees are recoverable under RCW 19.86.090 upon a finding of a Consumer Protection Act violation." *Mason*, 114 Wash. 2d at 856. "If the law entitles the plaintiff to future attorney's fees if the action succeeds, then there is no question that future attorney's fees are 'at stake' in the litigation." *Spicher v. Am. Fam. Mut. Ins. Co., S.I.*, No. C22-1116 MJP, 2022 WL 15759456, at *2 (W.D. Wash. Oct. 28, 2022) (citing *Fritsch*, 899 F.3d at 794 (cleaned up)). Vivint contends that a reasonable estimate of attorney's fees for this litigation is $32,000, based on a fee award to plaintiff's counsel in a similar case. Dkt. 16 at 8 ("Here, $32,000 is a reasonable estimate of prospective attorney's fees."). Adding this to Vivint's statutory damages estimate of $43,500 bumps the amount in controversy to $75,500, just above the threshold necessary to invoke this Court's jurisdiction.

The problem with this calculation is that it requires the Court to draw inferences in

Vivint's favor that are not found in Brinton's complaint: namely, that his allegation of "over twenty" emails means 29, and that every email originated in California to maximize available statutory damages, when in fact he alleges that the emails originated "from several different servers in Florida, California, and France among others." Dkt. 1-1 ¶ 14. This is inconsistent with Vivint's burden to prove the amount of controversy has been met and the Court's obligation to construe the removal statute strictly against removal. *See Hansen*, 902 F.3d at 1056–57. Although it is a close case, Vivint has not met its burden to prove the amount in controversy by a preponderance of the evidence, and the Court GRANTS the motion to remand. But because Vivint's basis for removal was not unreasonable, the Court DENIES Brinton's request for the attorney's fees he incurred in bringing the motion to remand.

## V.     CONCLUSION

For the foregoing reasons, the Court does not have diversity jurisdiction in this case. The Court ORDERS that:

1. Pursuant to 28 U.S.C. § 1447(c), all further proceedings in this case are REMANDED to the Superior Court for Clark County in the State of Washington;
2. The Clerk shall mail a certified copy of this Order to the Clerk of the Court for the Superior Court for Clark County, Washington;
3. The Clerk shall transmit the record herein to the Clerk of the Court for the Superior Court for Clark County, Washington; and
4. The Clerk shall close this case.

Dated this 7th day of August, 2024.

_____
Tiffany M. Cartwright
United States District Judge